Kavita Komal PAL; Alveena Akashni Pal; Davina Devika Pal; Suruj Pal, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 98–71135.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 1999

Filed March 2, 2000

936

Gary Silbiger (argued), Silbiger & Honig, Los Angeles, California, for the petitioners.

Alice Loughran (argued), United States Department of Justice, Washington, D.C., for respondent.

Before: WIGGINS, O'SCANNLAIN, and HAWKINS, Circuit Judges.

Opinion by Judge O'SCANNLAIN; Concurrence by Judge HAWKINS.

O'SCANNLAIN, Circuit Judge:

We must decide whether substantial evidence supports the Board of Immigration Appeals' finding that these Fijian natives of Indian descent have not credibly established their eligibility for asylum.

I

Mr. Suruj Pal, a Fijian of Indian descent, entered the United States with a six-month visa in December 1988 and overstayed the visa period. He later filed an application for asylum with the Immigration and Naturalization Service ("INS") on April 3, 1991. Mrs. Kavita Pal attempted to enter the United States with the couple's two children on October 26, 1990 at the Los Angeles airport, but was detained because she lacked the proper entry documents. She then applied for asylum. All four members of the Pal family claim asylum alleging persecution on account of race, religion, membership in a particular social group, and political opinion.[1] Specifically, the Pals claim that they were persecuted by ethnic Fijians because they are ethnic Indians and Hindu and support the Labor Party. The Immigration Judge ("IJ") held a consolidated hearing on the Pals' applications on March 18, 1994.

At the hearing, Mrs. Pal testified that in June 1987, following the overthrow of the government by ethnic Fijians, a group of armed men entered their home and raped her and beat her husband. Mrs. Pal testified that despite the fact that they were not wearing uniforms, she knew that the men were part of the military because they carried guns. They told her that Indians were not wanted in Fiji and should return to India. They then burned down the Pals' house. Mrs. Pal spent three weeks in the hospital. She stated that she reported the incident to the authorities, but that the police refused to take action because she was Indian. Mrs. Pal testified that she also suffered from persecution when the Hindu temple in which she worshiped was burned down by ethnic Fijians who told the Hindus they should convert.

Mr. Pal then testified. He stated that he was beaten and his jaw was broken on the same occasion that his wife was raped. After that incident, he worked as a taxi driver and while doing so was attacked and his jaw was broken in November 1989. He then left Fiji and entered the United States. At the conclusion of the hearing the IJ found that the Pals had not established their eligibility for asylum because their testimony was not credible. The Pals then appealed to the Board of Immigration Appeals ("BIA"), which undertook an independent review of the record, affirmed the IJ's adverse credibility findings, and found that even if Mrs. Pal were credible, the State Department Country Report on Fiji rebutted her fear of future persecution.

The Pals timely appealed.[2]

II

Mrs. Pal bears the burden of establishing her eligibility for asylum. *See Ghaly v. INS*, 58 F.3d 1425, 1428 (9th Cir.1995). To do so, she must demonstrate her fear of persecution is "subjec-

---

1. The asylum applications of the children are derivative of those of Mrs. Pal.

2. We review determinations of the BIA under the highly deferential standard of substantial evidence. *See Singh v. INS*, 134 F.3d 962 (9th Cir.1998). The BIA's decision must be affirmed unless the petitioner can establish "that the evidence he presented was so compelling that no reasonable factfinder could fail to find [eligibility for asylum]." *INS v. Elias–Zacarias*, 502 U.S. 478, 483–84, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). As we have

pointed out, the "strict standard" of substantial evidence review "bars a reviewing court from independently weighing the evidence and holding that petitioner is eligible for asylum, except in cases where compelling evidence is shown." *Kotasz v. INS*, 31 F.3d 847, 851 (9th Cir.1994). Where, as here, the BIA exercised its power to conduct an independent review of the record, we review the decision of the BIA and not that of the IJ. *See Ghaly v. INS*, 58 F.3d 1425, 1430 (9th Cir. 1995).

tively genuine and objectively reasonable." *Fisher v. INS,* 79 F.3d 955, 960 (9th Cir. 1996) (en banc). "An asylum applicant's candid, credible and sincere testimony demonstrating a genuine fear of persecution satisfies the subjective component of the well-founded fear standard." *Berroteran–Melendez v. INS,* 955 F.2d 1251, 1256 (9th Cir.1992) (quotations omitted). The BIA affirmed the findings of the IJ that the account Mrs. Pal gave to establish her eligibility was not credible. We review credibility findings under the substantial evidence standard. *See Mejia–Paiz v. INS,* 111 F.3d 720, 723 (9th Cir.1997).

■ The BIA found that Mrs. Pal's account was not credible based on several contradictions between the documentary evidence she submitted and her testimony at the hearing, as well as conflicting testimony she provided. In support of this finding, the BIA pointed to several specific contradictions in her accounts. First, at the hearing, Mrs. Pal, corroborated by her husband, testified that the alleged rape occurred on June 2, 1987, after which incident she was taken to the hospital. But the doctor's letter she submitted indicated that the rape occurred on August 17, 1987. Second, the BIA noted that though the same doctor purportedly wrote the letters for Mrs. Pal and Mr. Pal, the signatures are strikingly different. Third, Mrs. Pal's testimony that the family lived with relatives for the three years after the rape and prior to leaving Fiji contradicts her statement that she spent a year in New Zealand during this time. Fourth, she states in her asylum application that her husband was unemployed following the 1987 incident while he stated he worked as a taxi driver at that time.

Finally, the BIA found parts of Mrs. Pal's account incredible. Mrs. Pal claimed that her attackers were members of the military based only on the fact that they were carrying weapons. But her attackers were not wearing uniforms and during the turmoil following the coup, many individuals other than members of the military were likely carrying weapons. Moreover, though Mrs. Pal stated that the reason the military men who attacked her were not wearing uniforms was fear of getting reported, she simultaneously insisted that members of the military would never get in trouble even if reported.

Mrs. Pal's testimony at trial is thus riddled with inconsistencies and vague assertions. Cases in this circuit that have overturned an adverse credibility finding by the BIA or IJ despite inconsistencies have involved instances in which the contradictions were minor. *See, e.g., Martinez–Sanchez v. INS,* 794 F.2d 1396 (9th Cir. 1986) (reversing an adverse credibility finding based on inconsistencies in the number of children the applicant had and the date he joined a paramilitary group); *Vilorio–Lopez v. INS,* 852 F.2d 1137 (9th Cir.1988)(reversing an adverse credibility finding based on inconsistencies regarding the date of an incident and the length of time the petitioner hid from a death squad). The inconsistencies in Mrs. Pal's story are not minor; rather, they go to the heart of her asylum application. The single event of persecution that she alleges is the 1987 rape. The numerous inconsistencies cast serious doubt on whether this event ever occurred. The credibility determination, based on inconsistencies in her testimony and between her testimony and application, finds support in the record. At the very least, the record does not compel the opposite conclusion.

### III

■ Mrs. Pal contends that the BIA violated due process when it affirmed the adverse credibility finding of the IJ, but rested its finding on certain grounds not referenced by the IJ. For this contention she relies on *Campos–Sanchez v. INS,* 164 F.3d 448 (9th Cir.1999). In *Campos–Sanchez,* the court held that "the BIA erred in failing to provide Campos–Sanchez with a reasonable opportunity to offer explanations for alleged discrepancies" where the BIA's adverse credibility finding followed

explicit findings of credibility by the INS and the IJ. *Id.* at 449. The BIA did not rely on the grounds relied on by the IJ to deny Campos–Sanchez asylum; instead it rejected his application for asylum solely on the basis of its adverse credibility finding. *See id.* at 449–50. In ruling that the BIA must give the petitioner the opportunity to explain any inconsistencies, the court relied on the fact that Campos–Sanchez "had not been advised below that his credibility was questionable, or that any discrepancies appeared to exist." *Id.* at 450.

■■■■ Unlike the petitioner in *Campos–Sanchez*, Mrs. Pal was found not to be credible by the IJ, and the BIA affirmed the IJ's finding. The IJ's adverse credibility finding put her on ample notice that her credibility was questioned.[3] Her attempt to expand the holding of *Campos–Sanchez* by arguing that the BIA violated due process by relying on different inconsistencies than did the IJ is unconvincing. Once the IJ had found her not credible Mrs. Pal was on notice that the veracity of her entire testimony was thrown into question. At that point, the responsibility was hers to explain all the inconsistencies in her testimony, not just the examples pointed to by the IJ to provide a basis for his conclusion. Mrs. Pal's interpretation of *Campos–Sanchez* would eviscerate the BIA's authority to "conduct a de novo

review of the record, to make its own findings, and to determine independently the sufficiency of the evidence." *Castillo,* 951 F.2d at 1120–21. *Campos–Sanchez* does not extend as far as Mrs. Pal would like. As that court stated, "When the BIA decides a case based on an independent, adverse credibility determination, *contrary to that reached by the IJ*, it must give the petitioner an opportunity to explain any alleged inconsistencies that it raises for the first time." *Id.* at 450 (emphasis added). The IJ's adverse credibility finding gave Mrs. Pal sufficient notice that a denial of asylum could be based on inconsistencies in her story.[4]

### IV

Because we hold that substantial evidence supports the BIA's denial of asylum on the basis of its adverse credibility finding we do not reach the issue of whether the record supports the BIA's finding that she has no well-founded fear of future persecution because she remained undisturbed in Fiji for three years following the alleged instance of persecution and because the State Department Report indicates that conditions in Fiji have changed significantly since 1987.

### V

■■■■ Mr. Pal points to two instances of persecution on account of his race: the

3. Also unlike in *Campos–Sanchez*, Mrs. Pal had been put on notice prior to the IJ hearing that her credibility was in doubt when the initial INS assessment officer found that her account did not ring true.

4. The concurrence's contention that no question of a denial of due process is presented in this case because the BIA merely reaffirmed the grounds listed by the IJ is puzzling. The IJ found Mrs. Pal not to be credible based on the unfounded assertions she made in her account of her rape and her unbelievable explanation for having remained in Fiji for years afterwards, as well as the fact that she did so without incident. In affirming the adverse credibility finding, the BIA did point to the unconvincing story of her rape, but also relied on different grounds than those mentioned by the IJ. Specifically, the BIA noted

the inconsistency between her account and the corroborating evidence she introduced; the discrepancies between the signatures in the letters from the same doctor; conflicts between her testimony, her husband's testimony, and her application for asylum regarding where she lived following the alleged rape, whether she had lived in New Zealand for a year before coming to the United States, whether her family had been "key" supporters of the Labour Party; and what her and her husband's occupations were following the coup. Because the BIA relied in part on these new grounds in affirming the IJ's adverse credibility finding, we believe Mrs. Pal has properly challenged the BIA's decision on due process grounds. Thus, while we ultimately reject the claim, we are compelled to confront it.

beating which occurred when his wife was raped in 1987 and the assault on him when he was a taxi driver in 1989. The BIA denied his application because it found that his account of these occurrences was not credible. It based this finding on inconsistencies regarding the injuries Mr. Pal received during these assaults.

In his asylum application, Mr. Pal wrote that the native Fijians broke his jaw when they attacked him in 1989. This contradicted the letter from the doctor he submitted stating that Mr. Pal broke his jaw on June 2, 1987, the same day his wife was raped. The asylum application also contradicted Mr. Pal's testimony at the hearing where he testified that his jaw was broken in 1987. When asked to clarify this discrepancy, Mr. Pal first stated he was beaten in 1987, but his jaw was broken in 1989; he then stated that his jaw was broken two times; he then testified that his jaw was not broken when his wife was raped in 1987; he then stated his jaw was broken in two places; he then stated his jaw was broken in 1987; finally he stated that his jaw was broken at two times.

These inconsistencies provide substantial evidence to support the BIA's adverse credibility finding. In this case, the inconsistencies are the sum total of Mr. Pal's testimony. And they "involved the heart of his asylum claim," which rests only on these two incidents. *de Leon–Barrios v. INS*, 116 F.3d 391, 394 (9th Cir.1997) (citations omitted). Nor was the IJ's credibility determination based solely on the fact that the asylum application was less complete than the testimony at the hearing, another basis on which this court has rejected adverse credibility findings. *See Aguilera–Cota v. INS*, 914 F.2d 1375 (9th Cir.1990). Here, Mr. Pal's sworn testimony was inconsistent with, not an amplification of, his application. As Mr. Pal bears the burden of establishing his eligibility for asylum, the contradictions in his testimony regarding the heart of his claim support the BIA's conclusion that he has not done

so. Nothing in the record compels otherwise.

## VI

Nothing in the record compels a result different from that reached by the BIA. Accordingly, we deny the Pals' petition for review of the BIA's decision.

PETITION FOR REVIEW DENIED.

HAWKINS, Circuit Judge, concurring:

I write separately to concur because the majority takes our precedent in *Campos–Sanchez* one unnecessary step backwards.

The majority states that once an IJ finds a petitioner not credible, "the responsibility [is on the petitioner] to explain all the inconsistencies in her testimony, not just the few examples pointed to by the IJ to provide a basis for his conclusion." Majority Opinion at 939.

*Campos–Sanchez* holds that to satisfy due process a petitioner must be given "an opportunity to explain any alleged inconsistencies that [the BIA] raises for the first time." 164 F.3d 448, 450 (9th Cir. 1999). The *Campos–Sanchez* court made this statement where the IJ found the petitioner credible and the BIA reversed that credibility finding. Due process, however, applies equally to a case where the IJ finds the petitioner not credible for one reason and the BIA finds the petitioner not credible for an entirely unrelated reason: in both scenarios, the petitioner has no notice of the basis for the finding and no opportunity to confront or explain it. The majority would deny petitioners their due process rights to a full and fair deportation hearing where the IJ and the BIA both find the petitioner not credible but base their findings on completely different reasons.

No question of a denial of due process, however, is even presented in this case. Here, Mrs. Pal was given adequate opportunity to confront and explain the grounds listed by the IJ for the finding that she was not credible. The BIA's reaffirmance

of these grounds was sufficient to uphold the credibility determination. Nothing more was or is necessary in this case.